Good morning and welcome to the 11th Circuit. We're very happy to have you all here with us this morning. I'm sure you're all familiar with our lighting system, but one more review of that. When the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please respect those time limits and cease your presentation when the red light goes on. The only exception to that, though, of course, is if we're asking a question. We do want to hear your answer to the question, so in that case, please do go ahead and continue your answer even if it surpasses the red light. All right, and with that, our first case today is United States v. Thompson. We'll hear first from Mr. Lloyd. May it please the Court, J.D. Lloyd for Appellant Sam Thompson. While Mr. Thompson maintains he's entitled to relief on all claims he's raised, I'd like to focus my time today on the two ways Mr. Thompson's Sixth Amendment rights were violated in the proceedings below. First, the district court failed to protect Mr. Thompson's Sixth Amendment rights under Feretive California. This court should hold that the return of a second superseding indictment here was a significant change in circumstances that warranted the district court to conduct a new Feretive inquiry. This was necessary to ensure that Mr. Thompson's waiver of counsel continued to be knowing, intelligent, and voluntary. And second, Mr. Thompson's Confrontation Clause rights were violated when he was not allowed to confront the accuser when he was sequestered into a separate room under the provisions of 18 U.S.C. 3509B. And I'd like to start with the Feretta inquiry and the Feretta issue here. Just to be clear, you don't challenge the sufficiency of the initial Feretta inquiry, right? That's correct, Your Honor. We have no challenge to that. But what we argue here is that this court should vacate Mr. Thompson's convictions because the district court should have conducted a second Feretta hearing after the return of the second superseding indictment here. We base that on—Feretta is focused on the defendant's right to self-represent, and that waiver of counsel must follow a knowing and voluntary colloquy, or a colloquy in which he voluntarily and knowingly waives his right to counsel. And this court in Stroser recognized that a hearing is the ideal vehicle for which a court should assess this waiver. But we're not writing on a blank slate. As you acknowledge, you're not contesting the sufficiency of the first Feretta hearing. And so when the second indictment came back, Thompson appears before the same magistrate judge for the arraignment. The government summarizes the charges. At the end of the recitation, Thompson confirms he understood the nature of the charges, possible penalties. Then the parties come back before a magistrate judge for the suppression motion. And the magistrate judge starts to ask again about saying, you know, I've allowed you to represent yourself because of the Feretta hearing. Notes their standby counsel and starts asking Thompson, are you able to move forward in representing yourself? He says he is. The magistrate judge tells Thompson to alert the court if at any point he found he was no longer able to represent himself. Thompson agreed. The magistrate judge advises Thompson that absent such notification, she would assume he was fit to proceed in representing himself in accordance with her findings at the earlier Feretta hearing. I am citing to the red brief, of course. But so tell me why that's not enough to ensure that the Feretta hearing that was conducted sufficiently carries forward with the second indictment. Sure, Your Honor. So we would focus on counts four and five of this indictment. These are the most serious charges that Mr. Thompson faced, and the combination of these two charges would elevate his minimum sentence from the first superseding indictment from 15 years to 35 years based on the interplay of counts four and five and the mandatory minimums applicable. And the increased sentencing range went from 100 years to 220 years. And so focusing on those counts, we would argue that there was nothing about the first Feretta inquiry that probed into those counts. If this court will look back at it. But let me ask you a question about that, because at the, at the arraignment on the second, on the superseding indictment, the magistrate judge did have the government explain what those charges were and what the maximum penalties were. Isn't that right? The penalty range was discussed, but I would direct this court to look. I'm sorry. Let me just ask you one more question about that. And then the magistrate judge asked Mr. Thompson whether he understood those things, right? Correct. And he said he did, right? Correct. What else would the magistrate judge have asked or inquired about as far as those charges go given the background of the former Feretta, Feretta hearing? Right. Well, I think that this court should look back to the original Feretta hearing and look at the elemental discussion that the court had with all these charges. You know, counts four and five of the second superseding indictment weren't just an addition of charges or additional charges that mirrored what had already been charged, like extra counts of possession of child pornography or distribution. This was actually production and then the former felon charge in count five. So these were different elemental charges that clearly weren't covered in the first hearing. And we just think. Right. Right. But that's, I think you're not disputing that any of the other factors were ineffectively covered at the first Feretta hearing, right? So Judge Rosenbaum's question was what more needed to be discussed at this second discussion in order to make sure that he was still, that he knew about these charges and could make the kind of his choice to defend himself. I think a careful discussion of counts four and five as it happened in the previous Feretta with all the charges would have been required under Feretta here. But what exactly, like what exactly should be said, like it's, you know, the judge tells him and then he says, yes, I understand, is the judge supposed to say, but do you really understand? I mean, what else quite literally could have been said? I would turn back to the elemental discussion and just going through that as well. And you know, not every case with the return of a second superseding indictment would necessarily require perhaps a Feretta, a revisiting of the Feretta colloquy, but we just believe here that with the increase in stakes and the increase of penalty and... I'm sorry to interrupt, but what do you mean by the elemental discussion? I want to make sure that I'm understanding that, you know, I'm understanding what it is that your argument is. Well, in the first Feretta inquiry, they went through the elements of the charges that he faced. Okay. You mean the elements of the charges? Yes, Your Honor. I'm sorry. It should have been a little bit more clear. That's okay. I didn't know whether you meant, you know, the usual Feretta elements. Oh, I'm sorry. I should have been clear. Not those eight elements of the Feretta inquiry, but rather the elements of the individual charges. That was discussed for the original charges after the second superseding indictment, or excuse me, the first superseding indictment during the Feretta colloquy, but that didn't happen with the most serious charges. So are you saying that the government running through all of the charges was not sufficient, that the magistrate judge needed to run through the charges? I think that this is a situation where this court should be careful to apply Feretta when we've had a pretty significant change of circumstances. Again, there are certain circumstances, I believe, where it could be just presumed that the Feretta waiver continued, but in cases like this where there's been a very significant change. But here, the magistrate judge did not assume that Feretta held. The magistrate judge revisited the issue several times and said, I'm assuming you're still good under Feretta. You'll let me know if not. And your client said, I'm good, in essence. We would argue that the question about are you sure you want to represent yourself that happened days later in the first suppression hearing, that was more tied to Mr. Thompson's objection about having to wear shackles during this important hearing, the suppression hearing. And then in the June hearing when it came back up and he mentioned that again, I feel like that was more of a cursory question and not exactly the probing inquiry that Feretta requires. I think I'm still having trouble understanding exactly what else you think should have happened. I understand your point that more should have been said, but I'm having trouble drilling down on specifically what. I think Judge Branch asked, should the magistrate judge have read the charges in addition to the government doing so? Is that your argument, or is it something different? I think that the government did read the charges, but again, in the first Feretta inquiry, the court carefully went through the elements of each charge that he faced, and that didn't happen here. So your issue, just to make sure I understand, is that there wasn't an element-by-element discussion of the new charges. Is that what your concern is? I think that that's one concern, or that kind of goes to the part of the... Does Feretta require that? I wouldn't say that it necessarily, by our case law, requires that, but we do have this change of circumstances, and this is what the court did in the first instance. I think that doing it a second time with what is significantly changed in his case would have made more sense and would have been necessary to protect this record and his waiver of counsel. You're asking for a new rule that whenever there are new charges of sufficient seriousness, the court needs to have an element-by-element discussion of those charges. Is that correct? I think that that is one new rule that this court could create, because this court has... Sure, but what are you asking us to create, is my question. I guess I would ask this court, hold that when there has been a Feretta hearing and a waiver of counsel, if there is a significant change of circumstances, such as the circumstances here that the court undergo a second hearing, at least focus on the new charges that have come about and described in the way that they were described in the first hearing. So, does the court need to say at the beginning of the colloquy, this is now a Feretta hearing? I see my time is about to expire, may I answer Judge Grant's question? I think that for record purposes, you know, in Strozier, this court said that it would be best to hold a hearing. I don't think that there's necessarily an incantation necessary to say that this is a Feretta hearing and this is what we're doing, but this court did basically say we're going to have a Feretta hearing and assess the Sixth Amendment issue and then we will determine whether you can represent yourself. So it seems, I mean, I think what you're asking, if I'm understanding you correctly, is that we measure the sufficiency of the inquiry under Feretta the second time based on how detailed the inquiry under Feretta was the first time. That's what the rule is that you're asking us for, is that right? I think it's a good rule, Your Honor. I think that if... Okay, but so that would mean then that different defendants would be entitled to different amounts of explanation under Feretta under that rule. Why is that a rule we should adopt? Well, I think this court has recognized that there are certain circumstances in which the stakes change significantly in that they have to reassess whether that waiver continued after an initial Feretta inquiry. Right, but it would be based solely on how detailed the magistrate judge's inquiry was the first time, not based on the complexity of the charges. Well, I think this court could kind of meld ideas of Strozier saying that a hearing is the appropriate way to assess this issue, but then also look to what happened previously with the first Feretta inquiry and the first effective Feretta waiver. Can you give me... I know we've exceeded your time. Can you give me your best argument on your second point about how his right to confront witnesses or a witness was violated? Yes, Your Honor. Briefly, the statute requires the government to prove that the witness was unable to testify. We think that the evidence produced here demonstrated nervousness, that demonstrated a reluctance to testify, but it fell very short of proving or demonstrating in a defensible way for appellate review that this accuser was totally unable to testify. And that's what's required by Congress. The language affirmed in Craig was a Maryland statute that said, unable to reasonably communicate. We think that this court should take notice that, you know, the question of what is unreasonably able to communicate under Craig or what Craig affirmed is different from what Congress ultimately made statute in 3509B. All right. Thank you very much, Mr. Lloyd. Thank you. You've reserved five minutes, and we took you over by a couple of minutes, so, Ms. Ellickson, we're going to add two minutes to your time. You are under no obligation to use all of that time. Good morning, and may it please the Court. Jenny Ellickson for the United States. Mr. Thompson does not dispute that he knowingly, intelligently, and voluntarily waived his right to counsel at his 2022 Feretta hearing, and that waiver remained valid after the return of the second superseding indictment in February 2023. At the arraignment on that indictment, the magistrate judge had the government read through or summarize the charges and actually gave Mr. Thompson a choice about whether he wanted a summary or a full reading of the indictment, and Mr. Thompson said he wanted a summary. And the government provided that summary and gave all of the penalty information for the counts, gave the individual count information, and told him about the maximum total sentence he could possibly face if he was convicted on all counts, and those sentences ran consecutively. Mr. Thompson said that he understood, and then in the days that followed, the magistrate judge checked in on him several times to make sure that he was continuing to desire to represent himself, and each time he confirmed that he did. Is there ever a time where a second Feretta hearing is warranted? I think there could be, if a second Feretta hearing warranted, if something happens that could give the magistrate judge reason to think that the defendant no longer is actually knowingly, voluntarily, and intelligently waiving the right to counsel. So it's not, you're keying it to the behavior of the defendant, not to superseding indictments in any way. Yeah, I think what it really is is kind of the circumstances of the case, because you could imagine a situation where a second superseding indictment comes down and there is no material change to the charges, it's, you know, perhaps one count is swapped out for a different count on a different day. What about here, though? We have a dramatically increased sentencing possibility. Yes, and I do think that the magistrate judge, it's important to make sure that Mr. Thompson knows about that, and the arraignment, which should happen every time there is an indictment returned, is sufficient to make sure that he's aware of those charges. And so then, to the extent that there's any lingering question about whether Mr. Thompson was continuing to choose self-representation with that new knowledge, the magistrate judge ensured that he continued to do that here. And I guess, does it factor into this situation at all that he had standby counsel who also could be providing input to Mr. Thompson and the court on this issue? I think that's certainly another circumstance that goes into the, that further confirms that. But, of course, if there were any indication that Mr. Thompson did not, in fact, understand what the penalties were or what he was being charged with, then even having standby counsel wouldn't have been enough. Wouldn't you agree with that? Yeah. I think, I think if it's, if it seems clear that Mr. Thompson is no longer understanding what's going on, isn't, that it isn't knowing at that point, the magistrate judge, looking at the situation, should, you know, perhaps check in again. That doesn't necessarily mean, though, that a full Ferretta hearing is required that addresses all of the factors again, because the discussion of, as Mr. Thompson concedes, the discussion of all of the previous factors wouldn't have changed. And so, to the extent that the magistrate judge, in a change of circumstances that raises a question about the, the waiver, really only needs to kind of examine that specific piece of the defendant's knowledge, I think. But here, the arraignment was comprehensive, and to the extent that there was any question about the elements, Mr. Thompson actually received a copy of the, a paper copy of the indictment himself. He confirmed that he got that at the arraignment as well, so the, the, the specific charges in the indictment kind of lay out, I think, the elements in the recitation, at least in a kind of general way. And then, with respect to the, the colloquies that Mr. Thompson had with the magistrate judge after the arraignment, it is true that the first one happened, was precipitated by Mr. Thompson's objection to the shackling that he was, that he had. But, but it, it quickly became broader than that. So, first, you know, they, they talked about the shackling, but then, Judge Branch, as you noted, the, the court went broader and said, Mr. Thompson, I will assume that absent you notifying the court that you are fit to proceed, as you just indicated to the court, in representing yourself and moving forward in that way, previously found when we had our hearing regarding your self-representation. And then, continued later that day, court said, it, it is your intention to continue with self-representation at this time? And Thompson says, yes, Your Honor. And there, there are further inquiries that happen along the same lines. So it, it, it was, really, the magistrate judge did, did everything that could possibly be expected in order to ensure that his waiver remained knowing, voluntary, and intelligent. I'm happy to turn quickly to the other Confrontation Clause issue, which is the video testimony by Minor Victim 2, who I'll refer to as MV2. As the district court found, MV2's pretrial testimony established that he was unable to testify in Mr. Thompson's presence because of fear. The MV2's... What about the fact that MV2 said, I, you know, I do tend to freeze up, I give it about a 50-50 shot as to whether I would freeze up in court. Is 50-50 enough to trigger the statute? I think, well, I, I think, yes. And I think when, when, you know, the magistrate judge also, this is, this is a child who is, has a history of anxiety attacks and is making an estimate of, you know, what he thinks is likely to happen. The judge can view the child's demeanor, see how nervous the child is, even in this hearing where Mr. Thompson is not present. And, you know, I think the fact that even the child thinks that there is a 50-50 chance of an anxiety attack, and that he's had them before, is cause for alarm. And this isn't a situation, I think, where there needs to be a certain percentage of a likelihood of anxiety attack. If a child has a 50% chance of having a full-blown anxiety attack, I think the chances, the remaining 50%, even if there is no anxiety attack, does indicate that the child would be under incredible emotional strain and feeling strong, strong anxiety, even if it doesn't manifest into an actual attack. And that's the kind of circumstance that this statute is intended to protect, and that in Maryland v. Craig, the Supreme Court recognized that in the circumstances where there, a situation that could cause emotional trauma to a child that could be alleviated by the defendant not being present, that that's a situation where the right to confrontation gives way. And the statute here ensures that that right is protected in other ways. There's some discussion, I think, in the briefing that maybe our case law on this issue isn't as developed as in other circuits. Do you agree with that? I think it is true that other circuits have talked a bit more about what it means to be unable to testify because of fear. I'm not sure that this Court has squarely addressed that, but I think the consensus of the other circuits is basically, is the child reasonably able to testify in the presence of the defendant? And you, of course, have to look at whether it's the defendant that's the trigger, or just general anxiety about testifying. But I think that it seems as if those circuits have a fairly consistent interpretation. And one thing that I think that is important is that unable to testify because of fear, as those other circuits, I think, indicate in their analysis, it doesn't mean that the child has to be completely incapable of speech. Because a child could potentially be capable of speaking and yet still undergoing kind of a life-altering emotional trauma on the stand. And that's not, I think, what we expect a child to have to go through in order to describe what happened to them. Would you remind me how old this child was at the time of the trial? I think this child was, I know at the time of the conduct, I think he was 8. And I think he was about 12, 12 or 13 at the time of the trial. So the child's age factor into the analysis, do you think, say, we would look at a 16-year-old different than a 4-year-old or a 10- or a 12-year-old? I think it's possible that the judge, in examining the child, could think that the age could potentially factor in into how the child would be able to manage the trauma of the experience. And I don't want to say that there's some kind of sliding scale and that an older child should have to go through more. But it does seem at least possible that a younger child would have less experience. So it's a case-by-case inquiry. And in a particular case, a judge might confirm, based on the child's demeanor and history and all the rest of it, that even though they were 16 or 17, it would still be, you know, the requisite amount of anxiety would occur, that the right to confrontation would yield. But that wouldn't necessarily be a rule. And you're saying that in every case, it would be almost the totality of the circumstances analysis.  Yes. I think it's important that it be a case-specific analysis. It's important both for the child and also to protect the Defendant's Confrontation Clause rights to make sure that this is something that the judge makes a person-specific determination on. And that's what happened here. And, you know, we had three child victims. And the, you know, all three of the victims testified at a pretrial hearing. And based on their testimony, the government actually said we think for the other two victims that they will be able to testify in the courtroom with the Defendant. And it was really MV2 who manifested this different level of anxiety and fear. And so I think it shows that even in this case, the judge was being very careful about looking at the situation victim by victim. And, you know, MV3, I believe, was actually a year younger than MV2. And MV1 was two years older. And the age didn't necessarily exactly correlate. I think there were just a lot of factors going on here. And MV2 considered Mr. Thompson his father, correct? Yes. They had, I think, a very close relationship, you know, at least in the past. And just to be clear, the child still testified and was still subject to cross-examination by standby counsel. And Mr. Thompson was in another room directing standby counsel as to questions. Is that right? Yes. And I believe he was also visible on a TV screen. So to the extent that you needed a face-to-face, the child could see Mr. Thompson. Mr. Thompson could see the child. It's just they were not in the same room. And it was, I think, clear from the record would have been clear to the jury that Mr. Thompson was remaining involved in this cross-examination. The judge told the jury before MV2 testified that Mr. Thompson would be in another room because the court had determined that that was best both for MV2 and for Mr. Thompson. So gave a neutral instruction so that the jury wouldn't read anything adverse into the fact that Mr. Thompson wasn't there. Referred to the cross-examination as Mr. Thompson's cross-examination. And Mr. Roper, who was the standby counsel who performed it, made it clear that he was checking in with Mr. Thompson. And I think they even took a break before he completed the cross-examination so that he could go and consult with Mr. Thompson before he finished. So I think Mr. Thompson certainly maintained control over his defense, and the jury would have understood that Mr. Thompson was maintaining control as well. I'm happy to answer any more questions about these issues or the other issues in the brief. Otherwise, we will rest on the papers and ask this court to affirm. All right. Thank you very much, Ms. Ellickson. Mr. Lloyd, you have reserved five minutes. Thank you, Your Honor. I'd like to start with something the United States said about 3509, saying that the statute doesn't mean completely incapable of speech. And while that may be one reading of the statute, the plain language does say unable to testify. That was the subsection that was applicable here. And so when we talk about minor victim two's testimony, that there was a 50-50 chance that he would have a panic attack, I think that this court needs to look at that as evidence of anxiety, evidence that he might not be able to testify or he might have trouble testifying. But it doesn't cross this threshold of showing that he's flat out unable to testify in this case. And other cases cited by our brief and the United States brief kind of point to other situations where there's been a more robust finding about inability to testify. And of course, this issue is going to happen on a spectrum and it's going to develop in a range of opportunities or possibilities. But in US v. Fee, this court was reviewing the same issue where a mental health counselor had treated the accuser victim for a long time. This accuser had evidence of self-mutilation. The counselor had examined, she said that she had never examined someone so nervous and that on a 1-10 scale of 10 being this child needs to be hospitalized, she testified that this victim was an 8-1⁄2. And so clearly that's a fairly extreme example of the circumstances that come into play with 3509B. But it does show something that is a lot closer to unable to testify than what was shown here. Even the numbers 50-50 don't indicate a preponderance of the evidence that he wouldn't be able to testify. I wonder how it would have hurt your client's defense if this child had had an anxiety attack on the stand and wasn't able to participate in front of the jury. Do you think that would have been helpful to his defense? I mean, possibly not, Your Honor. But I do think that when we're talking about the confrontation clause and we're talking about limitations of that right through the lens of Craig, we're talking about is it serving some sort of societal interest and then is it necessary for the proceedings. And it's on that second prong that we think that the attention has to be focused in Mr. Thompson's right as opposed to what could be the pitfalls of having this witness testify. What's our standard of review for looking at the judge's decision here? I believe it would be de novo and looking for the finding of clear error for the factual determinations. And we think that that standard's been met here. How was the factual determination in clear error? We don't believe that the quantum of evidence presented at this hearing showed that he was truly unable to testify in this proceeding, that it gave indications but it was not clear as in the speed case that we pointed at. That sounds a lot like a good argument if our standard on this factual question were de novo. But I'm not sure I'm hearing what shows that that determination was clear error. Well, I think this court could rely on the simple numerical testimony, the 50-50 that, you know, the judge extrapolated this shows that he's unable to testify, it would satisfy that clear error review that it doesn't show even by preponderance of the evidence that he wouldn't be able to testify under these circumstances. So the last point I'd like to make is talking about assuming that this court finds some sort of error, we don't believe that this error was harmless beyond a reasonable doubt. This court should take notice of what these allegations were and what minor victim two ultimately testified to in terms of his relationship with Mr. Thompson and the purported bad touching that Mr. Thompson carried out against this victim. In the context of this trial, in the context of the charge of which he was focused on testifying, this is extremely powerful evidence that the jury certainly wouldn't have been able to disregard. And that in these circumstances, Mr. Thompson's right to confront his accuser and question him about these accusations should have been protected over. What about the fact that the other two, the judge determined that the other two accusers could take the stand directly face to face with your client? Doesn't that show, should we consider that with reference to the analysis for victim two or is that totally irrelevant? I think it's a little bit irrelevant because those victims were fairly clear that they could testify and that they weren't going to be able, they were, there was not evidence that they would be unable to testify at Mr. Thompson's presence. And with that, we'd ask that this court reverse Mr. Thompson's convictions and sentences. All right. Thank you very much, Mr. Lloyd. We note that you were court appointed and we very much appreciate your accepting the appointment and capably discharging your duties. Thank you.